1  KEREN E. GESUND, ESQ.
2  Nevada Bar No. 10881
   **GESUND & PAILET, LLC**
3  5550 Painted Mirage Rd.
   Suite 320
4  Las Vegas, NV 89149
   Tel: (702) 300-1180
5  Fax: (504) 265-9492
   keren@gp-nola.com
6
7  O.  Randolph Bragg
   HORWITZ, HORWITZ & ASSOC.
8  25 East Washington Street, Suite 900
   Chicago, IL 60602
9  (312) 372-8822
   rand@horwitzlaw.com
10
11 *Attorneys for Plaintiff*

12              **UNITED STATES DISTRICT COURT**

13                  **DISTRICT OF NEVADA**

14 NICOLE DIANE LA CARIA, on behalf of        Case No.: 2:18-cv-00317
   herself and all others similarly situated;
15
16        Plaintiff,

17 vs.

18 NORTHSTAR LOCATION SERVICES, LLC,
   A New York limited liability company, and
19 JOHN DOES 1-10.

20        Defendant.

21

22        **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

23        COMES NOW, Plaintiff, Nicole Diane La Caria (hereinafter referred to as "Plaintiff" or

24 "Ms. La Caria"), through undersigned counsel, who hereby respectfully moves for class

25 certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Northstar Location

26 Services, LLC's ("NLS" or "Defendant") initial communication with consumers fails to provide

27

28 the disclosures required by 15 U.S.C. § 1692e(11). NLS relies on a form collection letter to convey

                                    - 1 -

1   the 15 U.S.C. §1692e(11) disclosures. However, NLS only sends that form collection letter to its

2   third party letter vendor, for printing and mailing, on the day that it leaves a non-compliant

3   voicemail. Thus, the non-compliant voicemail message is the actual initial communication left for

4   consumers. According to NLS' records, NLS left a scripted, non-FDCPA-compliant voicemail

5   message on the same day that it sent a compliant, form, initial collection letter to its third party

6   letter vendor, on 197 accounts in Nevada.

7

8       Based on the foregoing, Ms. La Caria moves the Court to certify this case to proceed as a

9   class action against NLS defined as (i) all Nevada residents to whom NLS sent a letter in the form

10  of Exhibit 1 attached to the Complaint (ii) which was not returned as undeliverable (iii) in an

11  attempt to collect a debt incurred for personal, family, or household purposes as shown by

12  Defendants or the creditors' records (iv) who was left a voicemail message from NLS on the same

13  day that Exhibit 1 was dated (v) and was not notified during the call that "the debt collector is

14  attempting to collect a debt and that any information obtained will be used for that purpose" or

15  words to that effect (vi) during the one year prior to the filing of this lawsuit.

16

17      This Motion is made and based upon the pleadings and records on file herein, the

18  following Memorandum of Points and Authorities, and such evidence and argument as may be

19  presented at the hearing on this Motion, if any.

20

21      DATED this 22nd day of November, 2018.

22                                       _s/  O. Randolph Bragg
                                         O.  Randolph Bragg, *pro hac vice*
23                                       HORWITZ, HORWITZ & ASSOCIATES
                                         25 East Washington Street, Suite 900
24                                       Chicago, IL 60602
                                         (312) 372-8822
25                                       rand@horwitzlaw.com

26                                       */s/ Keren E. Gesund, Esq.*
27                                       KEREN E. GESUND, ESQ.
                                         Nevada Bar No. 10881
28                                       5550 Painted Mirage Rd.

                                         - 2 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Suite 320
Las Vegas, NV 89149
Tel: (702) 300-1180
Fax: (504) 265-9492
keren@gp-nola.com

*Attorneys for Plaintiff*

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## I.    NATURE OF THE CASE

Plaintiff Nicole Diane La Caria filed this class action against NLS alleging that its initial communication, a voicemail, fails to notify the consumer that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," in violation of 15 U.S.C. §§ 1692e, e(10), and e(11) of the Fair Debt Collection Practices Act, ("FDCPA" or the "Act").[1] NLS relies on a form collection letter to convey the above disclosure. However, NLS only sends that form collection letter to its third party letter vendor, for printing and mailing, on the day that it leaves the non-compliant voicemail. The letter itself gets mailed the next day.[2] Even if NLS' collection letters are mailed the same day NLS leaves the non-compliant voicemail message, it takes longer than 1 day for the letters to arrive at the consumers' residences. *See* the Declaration of Keren E. Gesund, attached herewith as Exhibit 1 at ¶¶9-10. Thus, NLS' collection practice of leaving non-FDCPA-compliant, scripted, voicemail messages on the same day it sends an FDCPA compliant collection letter to its third party letter vendor violates the FDCPA as a

---

[1] "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The "following conduct is a violation of this section." *Id.* "The failure to disclose" if "the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. §1692e(11).

[2] Matrix' service contract states that it ████████████████████████████████

day." A true and correct copy of Attachment A to Matrix' service contract is attached hereto as Exhibit 2.

1   matter of law. According to NLS, it left a scripted, non-FDCPA-compliant voicemail on the same

2   day that it sent a compliant, form, initial collection letter to its letter vendor, on 197 accounts in

3   Nevada.

4
5           Based on the foregoing, Plaintiff files this motion requesting the Court to certify this case,

6   pursuant to Rule 23 of the Federal Rules of Civil Procedure, to proceed as a class action against

7   NLS defined as (i) all Nevada residents to whom NLS sent a letter in the form of Exhibit 1 attached

8   to the Complaint (ii) which was not returned as undeliverable (iii) in an attempt to collect a debt

9   incurred for personal, family, or household purposes as shown by Defendants or the creditors'

10  records (iv) who was left a voicemail message from NLS on the same day that Exhibit 1 was dated

11  (v) and was not notified during the call that "the debt collector is attempting to collect a debt and

12  that any information obtained will be used for that purpose" or words to that effect (vi) during the

13
14  one year prior to the filing of this lawsuit

15          This Memorandum is submitted in support of Plaintiffs' Motion for Class Certification.

16  **II.     PLAINTIFFS' CLAIMS**

17  **A.              DEFENDANT'S INITIAL COMMUNICATION VIOLATED THE FDCPA.**

18          The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading

19  representation or means in connection with the collection of any debt" pursuant to 15 U.S.C. §

20
21  1692e. Section 1692e(11) requires a debt collector to disclose to the consumer, "if the initial

22  communication with the consumer is oral ... that the debt collector is attempting to collect a debt

23  and that any information obtained will be used for that purpose." Also, pursuant to 15 U.S.C. §

24  1692e(10), debt collectors are forbidden from "the use of any false representation or deceptive

25  means to collect or attempt to collect any debt or to obtain information concerning a consumer.

26          Defendant's initial communication with Ms. La Caria was a telephone message left on

27  December 26, 2017 which stated: "Yes, very important message from Northstar Location Services.

28

- 4 -

1    This is a call from a professional debt collector, please call back at 855-454-1082. Thank you."

2    This telephone message was derived from the script for such messages. *See* NORTHSTAR000071,

3    NLS' voicemail message for consumers, attached hereto as Exhibit 3. The voicemail message, and

4    the script it was based on, omit the required § 1692e(11) language "that the debt collector is

5    attempting to collect a debt and that any information obtained will be used for that purpose" or

6    words to that effect.

7

8    All collection attempts are recorded in Defendant's collection logs. When a scripted

9    voicemail message is left for the consumer, the dated entry is coded as LEFT MESSAGE W/

10   MACHINE. *See* NORTHSTAR000090-91, NLS collection log for Ms. La Caria's account,

11   attached hereto as Exhibit 4. NLS' collection logs clearly indicate when the voicemail message

12   was NLS' first communication with the consumer. Based on a search of its collection logs, NLS

13   was able to identify that it had left a voicemail message as its initial communication on 197 accounts

14   in Nevada. *See* a true and correct copy of NLS' supplemental responses to Plaintiff's

15   interrogatories, set two, attached hereto as Exhibit 5. The voicemail confused and misled the least

16   sophisticated consumer. See: *Edwards v. Niagara Credit Sols., Inc.*, 586 F. Supp. 2d 1346, 1352

17   (N.D. Ga. 2008), *aff'd on other grounds*, 584 F.3d 1350 (11th Cir. 2009); *Pasquale v. Law Offices

18   of Nelson & Kennard*, 940 F. Supp. 2d 1151. 1158-59 (N.D. Cal. 2013). Defendant has violated

19   the FDCPA by failing to inform the least sophisticated consumer, in its initial communication with

20   the consumer, "that the debt collector is attempting to collect a debt and that any information

21   obtained will be used for that purpose."

22

23

24   **B.          NO ISSUES OF INTENT OR RELIANCE EXIST.**

25   Whether Ms. La Caria or any other class member was actually misled is not an element of

26   the FDCPA cause of action. "[W]hether the initial communication violates the FDCPA depends

27   on whether it is likely to deceive or mislead a hypothetical 'least sophisticated debtor'" *Clark v.*

28

*Capital Credit & Collection Servs.*, 460 F.3d 1162, 1180 (9th Cir. 2006) (internal citations omitted). Without the 15 U.S.C. §1592e(11) disclosure, the least sophisticated consumer would not understand that NLS was seeking to collect a debt from her. For example, the consumer could believe that the debt collector was contacting her to obtain the location information for another debtor. *See e.g.* 15 U.S.C. § 1692b (pertaining to communications "with any person other than the consumer for the purpose of acquiring location information about the consumer"). The FDCPA is a strict liability statute. *Clark*, 460 F.3d at 1175. Thus, the Act does not require a showing of intentional conduct on the part of a debt collector.

C.       **STANDARD FOR CLASS CERTIFICATION.**

For a class to be certified, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

"When evaluating a motion for class certification, the court accepts the allegations made in support of certification as true, and does not examine the merits of the case." *Blackie v. Barrack*, 524 F.2d 891, 901 n16 (9th Cir. 1975). "Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions." *King v. Kansas City Southern Industries*, 519 F.2d 20, 25-26 (7th Cir. 1975). Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. See *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 544 (N.D.Cal. 2005); *Clark v. Bonded Adjustment Co.*, 204 F.R.D. 662 (E.D.Wash. 2002); *Irwin v. Mascott*, 186 F.R.D. 567 (N.D.Cal. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal. 1999); *Duran v. Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D.Ariz. 1982).

1   Courts routinely certify FDCPA cases based on telephone messages that violate 15 U.S,.C.

2   § 1692e(11). *Drossin v. National Action Financial Services, Inc.*, 255 F.R.D. 608, 619 (S.D.Fla.

3   2009); *Hicks v. Client Servs., Inc.*, No. 07-61822-CIV, 2008 WL 5479111, at *10 (S.D. Fla. Dec.

4
5   11, 2008). Also, see: *Huffman v. Zwicker & Assocs., P.C.*, No. CV-F-07-1369 LJO SMS, 2008

6   WL 11385471, at *2 (E.D. Cal. Mar. 28, 2008) (settlement class).

7   ## D.   THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION.

8
9   ### 1.   RULE 23(a)(1)–NUMEROSITY.

10   Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous

11   that joinder of all members is impracticable." *Gay v. Waiters and Dairy Lunchmen's Union*, 549

12   F.2d. 1330 (9th Cir. 1977). However, "impracticability does not mean impossibility." *Harris v.*

13   *Palm Springs AlpineEstates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964); *see also Rabidoux v. Celani*,

14   987 F.2d 931, 935 (2d Cir. 1993). "When the class is large, numbers alone are dispositive . . . ."

15
16   *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986). "The requirement of numerosity is

17   satisfied if the class is so large that joinder of all members is impracticable." *Gold v. Midland*

18   *Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014).

19   Here the class is so numerous that joinder of all members is impractical. The class definition

20   includes those persons for whom NLS' telephone message was the initial communication, rather

21   than NLS' initial verification letter attached as Exhibit 1 to the complaint, which did not inform the

22   recipient "that the debt collector is attempting to collect a debt and that any information obtained

23
24   will be used for that purpose." Defendant concedes that "197 individuals could *potentially* have

25   received a phone call the same day as a letter had been sent." Exhibit 5. "Class actions are generally

26   appropriate where standardized documents are at issue." *Abels*, supra at 543.

27   Thus, Ms. La Caria has satisfied the numerosity requirement of Rule 23(a)(1).

28

- 7 -

## 2.  RULE 23(a)(2) -- COMMONALITY

Rule 23(a)(2) requires that there be a common question of law or fact. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Where the defendant has engaged in standardized conduct towards members of the proposed class *e.g.* - by mailing allegedly illegal form letters or leaving improper telephone messages - the commonality requirement is met. "Common nuclei of fact are typically manifest where, like in the case sub judice, Defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations omitted); *Abels*, supra at 544.

Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members. *Hanlon v.Chrysler Corp.*, supra at 1019; *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56-57 (3d Cir. 1994). "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

There are common questions of law and fact common to the class which questions predominate over any questions affecting only individual class members. All the class members are persons for whom NLS left its telephone message on the same day its first collection letter Exhibit 1 (attached to the Complaint Dkt. No. 1-1) was sent to its third party letter vendor for mailing. Defendant's telephone message did not inform the recipient "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." As explained in Section II herein, the principal legal issue is whether Defendant's telephone message was the initial communication which violated the FDCPA by failing to inform the recipient "that

- 8 -

the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."

The policy and practice of Defendant is or was to leave telephone messages as its initial communication with Nevada consumers which fail to inform consumers "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," in violation of 15 U.S.C. § 1692e(11).

"To establish commonality, it is sufficient that plaintiff allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999). "The plaintiff's and the class' claims arise from the defendant having sent the same debt collection letters resulting in the same alleged violations of the act. . . Therefore, the proposed class members share common questions of law and fact." *Silva v. National Telewire Corp.*, 2000 U.S.Dist.LEXIS 13986, *7-8 (D.N.H., Sep. 22, 2000). FDCPA claims based on standard language in documents or standard practices are well suited for class certification. *Keele v. Wexler*, supra at 594. It is also important to note that there is no question in this case concerning the validity of the underlying debt. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (FDCPA action was not contingent on the validity of the underlying debt); *McCarthy v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) (same). Also, see: *Datta v. Asset Recovery Sols., LLC*, 2016 WL 1070666, at *3 (N.D. Cal. Mar. 18, 2016) (the court was presented with a common question of law - whether or not the collection letters violate the FDCPA based on a common course of conduct); *Jacobson v. Persolve, LLC*, 2015 WL 3523696, at *4 (N.D. Cal. June 4, 2015) (plaintiff allegations that each proposed class member received the same collection letter from defendants which allegedly was defective under the FDCPA "satisfied Rule 23(a)(2)'s commonality requirement"). The commonality requirement has been met because Ms. La Caria has alleged that the same standardized telephone message left for her by Defendant was left for each member of the proposed

- 9 -

1   class and that the message was unfair and deceptive, in violation of the FDCPA. *Abels v. JBC Legal*

2   *Group, P.C.,* 227 F.R.D. 541, 545 (N.D.Cal.2005).

3       Thus, Plaintiff has satisfied the commonality requirement of Rule 23(a)(2).

4           **3.  RULE 23(a)(3) -- TYPICALITY**

5

6       Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the

7   class. *Hanlon v. Chrysler Corp.*, 150 F.3d. 1011 (9th Cir.1998). A plaintiff's claim is typical if it

8   arises from the same event or practice or course of conduct that gives rise to the claims of other

9   class members and his or her claims are based on the same legal theory. The typicality requirement

10  may be satisfied even if there are factual distinctions between the claims of the named plaintiffs

11  and those of other class members. Typicality is satisfied "when each class member's claim arises

12
    from the same course of events, and each class member makes similar legal arguments to prove the
13
    defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (citations omitted).
14
15  Thus, similarity of legal theory may control even in the face of differences of fact. *Armstrong v.*

16  *Davis*, supra at 869; *See also*, *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *Rossini*

17  *v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598-600 (2d Cir. 1986); *Kornburg v. Carnival Cruise*

18  *Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th

19
    Cir. 1992); *Keele v. Wexler*, supra at 595. The Ninth Circuit "has noted that "the commonality and
20
21  typicality requirements of Rule 23(a) tend to merge." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D.

22  505, 510-11 (N.D.Cal.2007) (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir.2003)). In

23  *Abels v. JBC Legal Group, P.C.*, supra, the Northern District of California stated, "Each of the class

24  members was sent the same collection letter as [plaintiff] and each was allegedly subjected to the

25  same violations of the FDCPA. Therefore, this Court concludes that claims of the class

26  representative arc [sic] typical of the claims of the class." *Abels v. JBC Legal Group, P.C.*, supra at

27  545. Typicality was established where "each class member were sent an identical and unlawful

28

- 10 -

1    form collection letter and therefore subjected to the same violations of the FDCPA." *Gold v.*

2    *Midland Credit Mgmt., Inc.*, supra 306 F.R.D. at 631.

3         In the instant case, all the class members are persons for whom NLS left as its initial
4
     communication a telephone message which did not inform the recipient "that the debt collector is
5
     attempting to collect a debt and that any information obtained will be used for that purpose."
6

7         Plaintiff claims that NLS violated the FDCPA are the same as that of each class member.

8    Here, typicality is inherent in the class definition, *i.e.*, each class members' initial communication

9    with NLS was a telephone message which failed to inform them "that the debt collector is

10   attempting to collect a debt and that any information obtained will be used for that purpose."

11        Thus, the typicality requirement of Rule 23(a)(3) has been satisfied.

12

13        **4.    RULE 23(a)(4) -- ADEQUACY OF REPRESENTATION**

14        The Rule also requires that the named plaintiff(s) provide fair and adequate protection for

15   the interests of the class. *Epstein v. MCA, Inc.*, 179 F.3d. 641 (9th Cir. 1999). That protection

16   involves two factors: (1) whether plaintiff's counsel are qualified, experienced, and generally able

17   to conduct the proposed litigation, and (2) whether the plaintiffs have interests antagonistic to those

18   of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir 1978); *In re Drexel*

19   *Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

20

21        Ms. La Caria understands her responsibilities as class representative. See Declaration of

22   Nicole Diane La Caria in Support of Plaintiffs' Motion for Class Certification, filed herewith as

23   Exhibit 6. She is represented by experienced counsel whose qualifications are set forth in the

24   Declaration of Keren E. Gesund and Declaration of O. Randolph Bragg, filed herewith as Exhibits

25   1 and 7 respectively. "Plaintiff's counsel demonstrate they have sufficient experience to adequately

26   represent the class members." *Gonzales v. Arrow Fin. Servs. LLC*, 233 F.R.D. 577, 583 (S.D.Cal.

27   2006). The Northern District of California has stated, "it seems clear that the lead counsel for this

28

- 11 -

1   lawsuit, O. Randolph Bragg, has been qualified and found competent to represent similar class

2   actions." *Abels v. JBC Legal Group, P.C.*, supra at 545. " . . . and O. Randolph Bragg, are highly

3   experienced attorneys, with a significant history of class action litigation experience between

4   them." *Acik v. I.C. System, Inc.*, 251 F.R.D. 332, 336 (N.D.Ill. 2008). *Also, see*: *Bogner v. Masari*

5
    *Investments, LLC*, 257 F.R.D. 529 (D.Ariz. 2009).

6

7       The second relevant consideration under Rule 23(a)(4) is whether the interests of the named

8   plaintiff are coincident with the general interests of the class. Ms. La Caria and the class members

9   seek statutory damages as a result of Defendant's unlawful telephone messages. Given the identical

10  nature of the claims between Ms. La Caria and the class members, there is no potential for

11  conflicting interests in this action. There is no antagonism between the interests of the named

12  Plaintiff and those of the class.

13

14      Thus, Plaintiff has satisfied the representativeness requirement of Rule 23(a)(4).

15          **5.      COMMON QUESTIONS OF LAW OR FACT PREDOMINATE**

16      Rule 23(b)(3) requires that the questions of law or fact common to all members of the class

17  predominate over questions pertaining to individual members. *Hanlon v. Chrysler Corp.*, *supra* at

18  1019. This criterion is normally satisfied when there is an essential, common factual link between

19  all class members and the defendant for which the law provides a remedy. *Valentino v. Carter-*

20
    *Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996); see also: *Silva v. National Telewire Corp.*, supra at

21
    *11 ("The standardized nature of the defendant's conduct satisfied the requirement for common

22  questions of law or fact."). In this case, the "common nucleus of operative fact," is that all class

23  members, by definition, were subjected to Defendant's policy of leaving telephone messages as its

24  initial communication with Nevada consumers which fail to inform "that the debt collector is

25  attempting to collect a debt and that any information obtained will be used for that purpose." The

26

27

28

- 12 -

1   legal issue arising from Defendant's telephone message is whether it violates the FDCPA, 15

2   U.S.C. § 1692e(11), and is the same for each class member.

3       Cases dealing with the legality of standardized documents and practices are generally

4
5   appropriate for resolution by class action because the document is the focal point of the analysis.

6   See *Abels v. J.B.C. Legal Group, P.C.*, supra at 543; *Clark v. Bonded Adjustment Co.*,204 F.R.D.

7   662 (E.D.Wash. 2002); *Littledove v. JBC & Assocs.*, 2001 U.S.Dist.LEXIS 139 (E.D.Cal., Jan. 11,

8   2001); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal. 1999); *Irwin v.Mascott*,

9   186 F.R.D. 567 (N.D.Cal. 1999).

10      Because of the standardized nature of Defendant's conduct, common questions

11  predominate. "Predominance is a test readily met in certain cases alleging consumer . . . fraud. . . .

12
13  " *Amchem Prods. v. Windsor*, supra at 624.  In *Abels v. JBC Legal Group, P.C.*, supra, the court

14  stated in support of certifying the class,

15      The common fact in this case is that the putative class members were subjected to
        Defendants' policy of sending collection letters, which are alleged to violate the
16      FDCPA. Thus, the legal issues arising from Defendants' letters are the same for each
        class member. Here, the issues common to the class-namely, whether the Defendants'
17      systematic policy of sending collection letters, and whether those letters violate
18      FDCPA-are predominant. Plaintiff's Complaint centers around these issues.

19      The instant case is similar to *Abels*. The only individual issue is the identification of the

20  Nevada residents who were subjected to Defendant's practice and policy of leaving, as its initial

21  communication with the consumer, a telephone message which did not inform the recipient "that

22  the debt collector is attempting to collect a debt and that any information obtained will be used for

23
24  that purpose." Identification of the class members is a matter capable of ministerial determination

25  from Defendant's records. The dated entry on the collection logs of NLS – LEFT MESSAGE W/

26  MACHINE - clearly indicates when the telephone message was Defendant's first communication

27  with the consumer. The messages follow the same script and therefore are all in the similar format.

28  This is not the kind of problem that is a barrier to class certification.

- 13 -

1      "[T]he broad remedial purpose of the FDCPA compels this Court to conclude that the Rule

2   23(b)(3) requirement of predominance is satisfied where, as here, statutory damages are sought to

3   deter debt collectors from engaging in prohibited behavior." *Gold v. Midland Credit Mgmt., Inc.*,

4   supra, 306 F.R.D. at 633–34. "Furthermore, certifying the class will serve a 'deterrent' component

5   to other debt collectors who are engaging, or consider engaging in this type of debt collection

6   tactic." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

7

8      In this case, it is clear that both the class' factual issues and the issues of law predominate

9   over any individual questions.

10                    **6.    A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE**
                             **METHODS TO RESOLVE THIS CONTROVERSY.**
11

12      Efficiency is the primary focus in determining whether the class action is the superior

13   method for resolving the controversy presented. *Gete v.I.N.S.*, 121 F.3d 1285 (9th Cir. 1997). The

14   Court is required to determine the best available method for resolving the controversy and must

15   "consider the interests of the individual members in controlling their own litigation, the desirability

16   of concentrating the litigation in the particular forum, and the manageability of the class action."

17
    *Ballard v. Equifax Check Services, Inc.*, supra at 600. It is proper for a court, in deciding the "best"
18
    available method, to consider the ". . . inability of the poor or uninformed to enforce their rights,
19
20   and the improbability that large numbers of class members would possess the initiative to litigate

21   individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

22      In this case there is no better method available for the adjudication of the claims which

23   might be brought by each individual debtor subjected to Defendant's practice. *Clark v. Bonded*
24
    *Adjustment Co.*, supra at 666. Class actions are a more efficient and consistent means of trying the
25
26   legality of a collection letter. *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal.

27   1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999).

28

- 14 -

1    The efficacy of consumer class actions is recognized particularly where the individual's

2  claim is small.

3
4
>    In this instance, the alternative methods of resolution are individual claims for a
>    small amount of consequential damages or latch replacement...Thus, many claims
>    could not be successfully asserted individually. Even if efficacious, these claims
5
>    would not only unnecessarily burden the judiciary, but would prove uneconomic or
>    potential plaintiffs. In most cases, litigation costs would dwarf potential recovery.
6
>    In this sense, the proposed class action is paradigmatic. A fair examination of
7
>    alternatives can only result in the apodictic conclusion that a class action is the
>    clearly preferred procedure in this case.

8
9  *Hanlon v. Chrysler Corp.*, supra at 1023. Moreover, "the size of any individual damages claims

10  under the FDCPA are usually so small that there is little incentive to sue individually." *Ballard v.*

11  *Equifax Check Services, Inc.*, supra at 600 (citations omitted). Class certification of an FDCPA

12  damage action will provide an efficient and appropriate resolution of the controversy. See *Irwin v.*

13  *Mascott*, supra; *Ballard v. Equifax Check Services, Inc.*, supra.

14    In *Gold v. Midland Credit Mgmt., Inc.*, supra, 306 F.R.D. at 634, the court found that "a

15
class action is the superior vehicle for adjudicating consumer rights relating to Defendants'
16
collection letter because individual recovery is small, and resorting to alternative mechanisms
17
18  would be unduly inefficient."

19    Thus, certification of this action is the superior method to resolve the controversy presented

20  and the requirements of Rule 23(b)(3) have been met.

21  ///

22  ///

23  ///

24  ///

25
26  ///

27  ///

28
- 15 -

1    **III. CONCLUSION**

2          The proposed class meets the requirements of Rules 23(a) as well as Rule 23(b)(3). Plaintiff

3    Nicole Diane La Caria respectfully requests that the Court certify this action to proceed as a class

4
5    action and that she be named as the class representative.  Pursuant to Rule 23(g) her attornesys

6    should be appointed as class counsel.

7          DATED this 22nd day of November, 2018.

8
9                    _s/  O. Randolph Bragg_
                     O.  Randolph Bragg, *pro hac vice*
10                   HORWITZ, HORWITZ & ASSOCIATES
                     25 East Washington Street, Suite 900
11                   Chicago, IL 60602
                     (312) 372-8822
12                   rand@horwitzlaw.com

13                   GESUND & PAILET, LLC

14                   _/s/ Keren E. Gesund, Esq._
15                   KEREN E. GESUND, ESQ.
                     Nevada Bar No. 10881
16                   5550 Painted Mirage Rd.
                     Suite 320
17                   Las Vegas, NV 89149
                     Tel: (702) 300-1180
18                   Fax: (504) 265-9492
19                   keren@gp-nola.com

20                   *Attorneys for Plaintiff*

21

22

23

24

25

26

27

28

- 16 -

1

2

3

**CERTIFICATE OF MAILING**

4

     I HEREBY CERTIFY that on this 22nd day of November, 2018, I served a true and

5

correct copy of the foregoing document entitled **PLAINTIFF'S MOTION FOR CLASS**

6

7

**CERTIFICATION** via US mail and electronic mail to the following persons:

8

    Craig J. Mariam, Esq.
Lynne McChrystal, Esq.

9

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street

10

Suite 1550
Las Vegas, NV 89101

11

Telephone: (702) 577-9333
Facsimile: (877) 306-0043

12

cmariam@grsm.com

13

lmcchrystal@grsm.com
*Attorney for Northstar Location Services, LLC*

14

15

16

                                              */s/ Keren E. Gesund*

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -