# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| NICOLE DIANE LA CARIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:18-cv-00317-GMN-DJA |
| vs. | ) | |
| | ) | **ORDER** |
| NORTHSTAR LOCATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Motion to Deny Class Certification, (ECF No. 44), filed by Defendant Northstar Location Services, LLC ("NLS"). Plaintiff Nicole Diane La Caria ("Plaintiff") filed a Response, (ECF No. 47), and Defendant filed a Reply, (ECF No. 50).

Also pending before the Court is Plaintiff's Motion to Certify Class, (ECF No. 45). NLS filed a Response, (ECF No. 52), and Plaintiff filed a Reply, (ECF No. 53). For the reasons discussed below, NLS's Motion is denied and Plaintiff's Motion is granted.

## I.   BACKGROUND

Plaintiff brings this putative class action against NLS, on behalf of herself and all others similarly situated, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. (Compl., ECF No. 1). NLS is an organization established in 2001 that provides, among other things, first and third-party collections, customer care programs, and location services to clientele nationwide. (NLS's Mot. Deny Class ("NLS Mot.") at 3, ECF No. 44). Plaintiff alleges that NLS's initial communication with consumers, a scripted voicemail message, fails to notify the consumer that NLS "is attempting to collect a debt and that any information obtained will be used for that purpose," as required by 15 U.S.C. § 1692e(11). (Pl.'s Mot. Class Certification ("Pl.'s Mot.") at 3, ECF No. 45). According to Plaintiff, NLS

relies on a form collection letter to convey the required § 1692e(11) disclosures. (Form Collection Letter, Ex. 1 to Compl., ECF No. 1-1).  However, those form collection letters are electronically sent to NLS's third party letter vendor, Matrix Image Solutions ("Matrix"), the same day the voicemail message is left. (*See* Matrix Service Contract, Ex. 2 to Pl.'s Mot., ECF No. 45-3).  Matrix mails the letters to the consumers the next day. (*Id.*); (Pl.'s Mot. at 3). Nevertheless, it is Matrix's practice to use the date the account was electronically transferred from NLS to Matrix, rather than the date the letter is actually mailed. (Basta Dep. 17:16–21, Ex. 5 to Pl.'s Resp., ECF No. 47-5).  Thus, the non-compliant voicemail message is the initial communication left for the consumers. (Pl.'s Resp. at 2, ECF No. 47).

Plaintiff further contends that all of NLS's collection activities are notated in a detailed collection log NLS maintains for each consumer. (*Id.* at 4).  When a debt collector leaves the above scripted voicemail message, he or she notes "LEFT MESSAGE W/ MACHINE" along with the date, time, and phone number called. (*See* NLS Collection Log, Ex. 6 to Pl.'s Resp., ECF No. 47-6); (Leising Dep. 40:6–19, Ex. 3 to Pl.'s Resp., ECF No. 47-3).

When NLS sends a collection letter to Matrix for mailing, NLS's case management system documents "LT1 NOTICE SENT VIA MATRIX"  along with the date and time the letter was sent to Matrix. (*See* NLS Collection Log, Ex. 6 to Pl.'s Resp.); (Leising Dep. 21:2–8, Ex. 3 to Pl.'s Resp.).  Matrix does not notify NLS of the date the letter is actually mailed. (Basta Dep. 27:22–24, Ex. 5 to Pl.'s Resp.).  Therefore, the only record NLS maintains is the date it electronically transferred the collection letter to Matrix for mailing. (Pl.'s Resp. at 4). NLS is able to perform electronic searches of its collection logs in order to identify the number of accounts a voicemail was left on the same day it electronically transferred the consumer's information to Matrix (for purposes of printing and mailing NLSs' initial collection letter). (Pl.'s Resp. at 4).  According to NLS, this potentially happened on 197 accounts. (NLS Resp. Interrog., Ex. 7 to Pl.'s Resp., ECF No. 47-7).

One of NLS's clients is an entity named Navient. (Pl.'s Resp. at 8).  NLS's collection activities for Navient are limited to the collection of student loan debt. (*Id.*).  In 2005, Plaintiff incurred a student loan, but after experiencing financial hardship, she was not able to make the necessary loan payments. (*Id.*).  On December 26, 2017, Navient sent Plaintiff's account to NLS for collection. (*Id.*); (NLS Collection Log, Ex.6 to Pl.'s Resp.)  About seven hours after receiving Plaintiff's account, NLS called Plaintiff's cell phone and left the following message: "Yes, very important message from Northstar Location Services.  This is a call from a professional debt collector, please call back at [phone number].  Thank you." (*Id.*).  On December 27, 2017, Matrix printed and mailed NLS's initial collection letter to Plaintiff; however, the letter is dated December 26, 2017. (Basta Dep. 17:5–9, Ex. 5 to Pl.'s Resp.).  Plaintiff therefore contends NLS's voicemail message was placed with Plaintiff before the collection letter was sent. (Pl.'s Resp. at 9).

On February 21, 2018, Plaintiff filed her Complaint, (ECF No. 1), alleging a claim for violations of the FDCPA, 15 U.S.C. §§ 1692e, e(10), and e(11) against NLS.  The parties' motions now follow.

## II.   LEGAL STANDARD

Class actions are governed by Federal Rule of Civil Procedure 23 ("Rule 23").  In attempting to certify a class, the party seeking class certification bears the burden of demonstrating that the requirements of Rule 23(a) and (b) are met.  *Conn. Retirement Plans & Trust Funds v. Amgen. Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011).  "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Rather, "[a] party seeking certification must affirmatively demonstrate his compliance with the rule," and a trial court should only certify a class if it "is satisfied, after a rigorous analysis that the prerequisites of Rule 23(a) have been satisfied." *Id.* (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

In order to successfully move to certify a class under Rule 23, plaintiffs must satisfy two sets of criteria. First, plaintiffs must show each of the following:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4); *see Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). These requirements are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (overruled on other grounds). Second, plaintiffs must show at least one of the following:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(1)–(3).

Generally, a district court should not address the merits of the case when determining

certification under Rule 23. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)

(holding that a class action plaintiff cannot argue the merits of his case to circumvent the Rule

23 certification requirements).  However, where the merits at issue concern requirements of

certification under Rule 23, the court must consider such evidence. *Hanon v. Dataproducts

Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

A district court's decision to certify a class is reviewed for abuse of discretion. *In re

Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953, 957 (9th Cir. 2009).

"Abuse exists in three circumstances: (1) reliance on an improper factor, (2) omission of a

substantial factor, or (3) a clear error of judgment in weighing the correct mix of factors." *Id.*

(citing *Parra v. Bashas', Inc.*, 536 F.3d 975, 977–78 (9th Cir. 2008)).

**III.  <u>DISCUSSION</u>**

Plaintiff seeks to certify the following class:

> (i) all Nevada residents to whom NLS sent a letter in the form of Exhibit 1[1]
> attached to the Complaint (ii) which was not returned as undeliverable (iii) in
> an attempt to collect a debt incurred for personal, family, or household
> purposes as shown by Defendants or the creditors' records **(iv) who [were]
> left a voicemail message from NLS on the same day that Exhibit 1 was
> dated** (v) and were not notified during the call that "the debt collector is
> attempting to collect a debt and that any information obtained will be used
> for that purpose" (vi) during the one year prior to the filing of this lawsuit.

(Pl.'s Mot. at 2, ECF No. 45) (emphasis added).

As an initial matter, NLS emphasizes that the language of section iv is different that the

language provided for the same section in Plaintiff's Complaint. (NLS Resp. at 11–13, ECF

No. 52).  In Plaintiff's Complaint section iv states: "who were called by NLS on the same day

that Exhibit 1 was dated as sent." (Compl. ¶ 21).  According to NLS, the change is procedurally

---

[1] "Exhibit 1" refers to NLS's form collection letter, which is attached to Plaintiff's Complaint. (Form Collection Letter, Ex. 1 to Compl., ECF No. 1-1).

inappropriate because Plaintiff did not obtain leave to file an amended complaint containing the modified language. (NLS Resp. 12–13).  NLS cites decisions from federal district courts in support of its argument. (*Id.*).  Plaintiff explains the revision "simply clarifies the definition and adds to the ease of ascertaining the class members." (Pl.'s Reply at 5, ECF No. 53).  Further, Plaintiff submits caselaw supporting the proposition that a district court is not bound by the definition of a class in the complaint. (*Id.* at 3); *see, e.g.*, *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly"); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004).  Absent binding Ninth Circuit caselaw requiring Plaintiff to amend her Complaint in order to modify a class definition, the Court finds NLS's argument unconvincing.  Indeed, the change is a minor one which serves to better ascertain class members.  As such, the Court will not require Plaintiff to amend her Complaint in order to modify the class definition in this manner.  The Court will now address the requirements of Rule 23(a) and (b).

### A.    Rule 23(a)

#### 1.    Numerosity

Rule 23 mandates that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Quoting NLS's response to an interrogatory, Plaintiff indicates "197 individuals could *potentially* have received a phone call the same day as a letter had been sent." (NLS Resp. Interrog., Ex. 5 to Pl.'s Resp., ECF No. 45-7).  While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement. *See Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) (even forty class members "is a sufficiently large group to satisfy Rule 23(a)"); *see also* Rubenstein, Newberg on Class Actions, § 3:12 ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers

alone."). Accordingly, the Court finds that a class of 197 members would be so numerous that joinder of all members is impracticable. Plaintiff has satisfied the numerosity requirement.

### 2. *Commonality*

Under Rule 23(a)(2), Plaintiff must establish that there "are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Generally, Rule 23(a)(2)'s requirements "have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (internal quotation marks and brackets omitted). Nonetheless, the U.S. Supreme Court has recognized that "any competently crafted class complaint literally raises common 'questions.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (internal quotation marks omitted). As a result, the Court explained that "reciting these questions is not sufficient to obtain class certification." *Id.* (internal quotation marks omitted). Instead, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury" which does not "mean merely that they have all suffered a violation of the same provision of law." *Id.* The claims "must depend upon a common contention" and that common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The principal question in this analysis is whether the questions plaintiffs raise "can be answered 'yes' or 'no' in one stroke as to the entire class." *Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014).

Here, Plaintiff asserts there are two questions that, when answered, will impact the entire class. The common questions of law confronting the class members are: (1) whether the telephone message was the initial communication by NLS to the consumer, and (2) whether NLS's telephone message violates § 1692e(11) by failing to state that NLS "is attempting to collect a debt and that any information obtained will be used for that purpose." (*See* Pl.'s Resp.

at 14, ECF No. 47).  Plaintiff maintains that each class member received NLS's scripted phone message substantially in the form: "We have an important message from Northstar Location Services.  This is a call from a debt collector.  Please call Department Phone [phone number]." (NLS Messaging Policy, Ex. 2 to Pl.'s Resp., ECF No. 47-2).[2]  Plaintiff further submits that the voicemail is recorded in NLS's collection logs as "LEFT MESSAGE W/MACHINE."  NLS disputes commonality stating that the messages left on consumer accounts are "*not* necessarily verbatim" to the script, and that the notes in the collection logs do not reflect the content of those messages. (NLS Resp. at 19, ECF No. 52).  However, as Plaintiff points out, it is unlikely that the debt collectors are deviating from the scripted message by *adding* the required FDCPA disclosure. (Pl.'s Reply at 7) (citing *Hicks v. Client Servs., Inc.*, No. 07-61822-CIV, 2008 WL 5479111, at *7 (S.D. Fla. Dec. 11, 2008) ("The exact script of the messages need not be common to the class members, since it is the lack of information that is relevant.")).  Indeed, the voicemail message NLS left for Plaintiff as alleged in the Complaint is: "Yes, very important message from Northstar Location Services.  This is a call from a professional debt collector, please call back at [phone number].  Thank you." (Compl. ¶ 32).  Therefore, while the scripted message is not in fact identical to that alleged in the Complaint, it is *materially* identical.

---

[2] The policy (or script) states:

UPDATED MESSAGING POLICY EFFECTIVE IMMEDIATELY – 2/17/17

Please begin utilizing the following message when leaving a voice mail message intended for the customer:

"We have an important message from Northstar Location Services.  This is a call from a debt collector.  Please call Department Phone #."

(NLS Messaging Policy, Ex. 2 to Pl.'s Resp.).

1    Plaintiff has also provided evidence of NLS's policies regarding the timing of its initial

2    communication voicemail message and the mailing of its form collection notice.  NLS's form

3    collection letters are sent to Matrix the same day the voicemail is left.  Matrix testified that it

4    does not send collection letters the day it receives the electronic information from NLS. (Pl.'s

5    Resp. at 7) (citing Basta Dep. 17:16–21, Ex. 5 to. Pl.'s Resp.).  "Rather, [Matrix] mails the

6    letters the next day using the placement date from the previous day." (Pl.'s Resp. at 7).

7    In sum, Plaintiff provides questions of law or fact common to the class because the

8    answers to these questions would provide classwide resolution.  Plaintiff has provided evidence

9    in the form of depositions and NLS's company policies that apply to all class members.

10   Because the determination of the core issues of fact or law are common to the proposed class,

11   the Court finds that the commonality requirement is satisfied.

12                            ***3.     Typicality***

13   Rule 23 requires Plaintiff to establish that the class representative's claim is typical of

14   the claims of the class. Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is

15   to assure that the interest of the named representative aligns with the interests of the class."

16   *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal

17   quotation marks omitted).  Under the "permissive standards" of Rule 23(a)(3), the

18   "representative claims are 'typical' if they are reasonably co-extensive with those of absent

19   class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  "The test

20   of typicality is whether other members have the same or similar injury, whether the action is

21   based on conduct which is not unique to the named plaintiffs, and whether other class members

22   have been injured by the same course of conduct." *Wolin*, 617 F.3d at 1175 (internal quotation

23   marks omitted).  Although the claims of the class representative need not be identical to the

24   claims of other class members, the class representative "must be part of the class and possess

25

the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks omitted).

Here, Plaintiff maintains that all members of the class are persons in Nevada for whom NLS left its scripted message (or words to the effect of the scripted message), on the same day NLS's initial collection letter was dated. (Pl.'s Resp. at 14). Thus, Plaintiff concludes that her claim regarding NLS's violations of the FDCPA are the same as that of each class member. (*Id.*).

Defendant counters that typicality is not satisfied because of the circumstances surrounding Plaintiff's claim. During Plaintiff's deposition, NLS played a recording of the voicemail that was left for her. (NLS Resp. at 21, ECF No. 52). Plaintiff said she did not recognize the recording and that she had not heard it before the date of her deposition. (*Id.*) (citing Pl.'s Dep. 93:1–4, 93:10–13, 93:24–94:2, Ex. 5 to NLS Mot., ECF No. 44-5). But whether Plaintiff recognizes the voicemail or if she listened to it is not at issue. This was explained in *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) (J. Posner). In that case, a defendant argued that a letter was not "confusing" and, therefore, not in violation of the FDCPA; but that "even if the letter is confusing this is of no moment because [plaintiff] didn't read it." *Id.* The court explained:

> That would be a telling point if [plaintiff] were seeking actual damages, for example as a consequence of being misled by the letter into surrendering a legal defense against the credit-card company. He can't have suffered such damages as a result of the statutory violation, because he didn't read the letter. But he is not seeking actual damages. *He is seeking only statutory damages, a penalty that does not depend on proof that the recipient of the letter was misled.* All that is required is proof that the statute was violated, although even then it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling.

*Id.* (emphasis added). Similarly, here, whether Plaintiff heard the recording would only be relevant if she were seeking actual damages. But that is not the case—Plaintiff seeks *statutory*

damages.  Thus, NLS's argument is unavailing.  The Court finds Plaintiff has satisfied the typicality requirement.

### 4.    *Adequacy*

Adequacy under Rule 23(a)(4) relates to whether "(1) the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

Here, at this juncture, there is nothing in the record to suggest there is a conflict of interest as to Plaintiff and counsel.  Further, Plaintiff avers that she understands her responsibilities as a class representative and that she does not have interests antagonistic to those of other class members. (Pl.'s Resp. at 16–17, ECF No. 47); (Pl.'s Decl., Ex. 10 to Pl.'s Resp., ECF No. 47-10).  Moreover, Plaintiff asserts that there is a shared interest with class members to recover compensation. (Pl.'s Resp. at 16–17).  The Court is therefore satisfied as to Plaintiff's adequacy.

The Court further finds that class counsel, having several years of legal experience in the area of consumer rights and debt collections, will competently and vigorously prosecute the instant case. (*See* Gesund Decl., Ex. 1 to Pl.'s Mot., ECF No. 45-1); (Bragg Decl., Ex. 7 to Pl.'s Mot., ECF No. 45-7).

NLS counters, *inter alia*, that Plaintiff is not an adequate class representative because she lacks sufficient knowledge concerning this suit. (NLS Mot. at 25, ECF No. 44).  According to NLS, Plaintiff's deposition testimony shows that she cannot define the class or the class period and is unable to identify the basis for her claim. (*Id.*).  The Court finds that Plaintiff sufficiently fulfills the requirements for serving as class representative.  NLS's arguments as to Plaintiff's knowledge of the suit are inconsistent with the Ninth Circuit's low bar for qualifying as an adequate class representative. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund*

1  *v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly

2  that he understands his duties and is currently willing and able to perform them.  The Rule does

3  not require more.").

4      **B.**    **Rule 23(b)**

5      Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to

6  class members *predominate* over any questions affecting only individual members, and that a

7  class action is *superior* to other available methods for fairly and efficiently adjudicating the

8  controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).  These are deemed the

9  "predominance" and "superiority" requirements.  The Court will first address predominance

10  and then address superiority.

11          *1.*    *Predominance*

12      In determining predominance, the Court must ask "whether proposed classes are

13  sufficiently cohesive to warrant adjudication by representation" and the Court must focus "on

14  the relationship between the common and individual issues." *Mevorah v. Wells Fargo Home*

15  *Mortg.* (*In re Wells Fargo Home Mortg. Overtime Pay Litig.*), 571 F.3d 953, 957 (9th Cir.

16  2009).  "When common questions present a significant aspect of the case and they can be

17  resolved for all members of the class in a single adjudication, there is clear justification for

18  handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler*

19  *Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  Additionally, damages decided on an individual

20  basis do not preclude class certification. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.

21  1975).

22      NLS first argues, in its Motion to Deny Certification, that Plaintiff cannot satisfy the

23  predominance requirement of Rule 23(b)(3) because the proposed class definition is improperly

24  "fail-safe." (NLS Mot. at 21–23).  However,  NLS does not raise this argument again in its

25  Response to Plaintiff's Motion for Certification.

A fail-safe class is "one that is defined so narrowly as to 'preclude[ ] membership unless the liability of the defendant is established.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) (quoting *Kamar v. RadioShack Corp.*, 375 Fed. App'x. 734, 736 (9th Cir. 2010)).  The Ninth Circuit has cautioned, however, that "our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe," though the circuit has not ruled directly on the appropriateness of fail-safe classes. *See Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) (citing William B. Rubenstein, Newberg on Class Actions § 3:6 (5th ed. 2016)), which states, "many courts have held that class definitions referencing the merits of the case are not necessarily problematic.").  The rationale for this caution, as suggested by the circuit's decisions, is that "[i]t is implicit in the definition of [a] class that its members are persons who claim to have been (or to be)" wronged. *Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*, 173 F.3d 713, 722 (9th Cir. 1999).  Because a class is similarly linked by allegations of wrongful conduct, denying certification based on the definition's mere reference to the ultimate issue linking them would "preclude certification of just about any class of persons alleging injury from a particular action." *Vizcaino*, 173 F.3d at 722 (citations omitted). In light of the Ninth Circuit's apparent disapproval of the premise that a class can be fail-safe, and because NLS does not reassert this argument in Response to Plaintiff's Motion for Certification, the Court declines to rule on this issue.

NLS next argues that Plaintiff's "new and improperly pled" class definition does not meet the requirements of Rule 23(b)(3) because Plaintiff's central argument is based on the contention that all class members were subjected to NLS's policy of leaving phone messages as its initial communication with Nevada consumers, which fail to inform that NLS is attempting to collect a debt and that any information obtained will be used for that person. (NLS Resp. at 18–20).  As mentioned above, regarding commonality, NLS contends the voice messages it leaves for consumers are "*not* necessarily verbatim" to its script and the notes in its collection

1  log do not reflect the content of the messages.  For the reasons set forth in Part III.A.2 *supra*,

2  the Court rejects NLS's argument.

3  The Court finds that the predominance element is satisfied.  Here, the legal issues arising

4  from NLS's voice messages and the timing of its initial form collection letter are essentially the

5  same for each class member.  In other words, the issue common to the class—namely, whether

6  NLS's practice of leaving, as its initial communication with the consumer, a telephone message

7  which did not inform the recipient "that the debt collector is attempting to collect a debt and

8  that any information obtained will be used for that purpose,"—is predominant.  "At bottom, the

9  broad remedial purpose of the FDCPA compels this Court to conclude that the Rule 23(b)(3)

10  requirement of predominance is satisfied where, as here, statutory damages are sought to deter

11  debt collectors from engaging in prohibited behavior." *Gold v. Midland Credit Mgmt., Inc.*, 306

12  F.R.D. 623, 633–34 (N.D. Cal. 2014).

13  ### 2.    *Superiority*

14  The factors the Court can consider to satisfy the superiority requirement include: (1)

15  class members' interests in individually controlling the prosecution or defense of separate

16  actions; (2) the extent and nature of any litigation concerning the controversy already begun by

17  or against class members; (3) the desirability or undesirability of concentrating the litigation of

18  the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed.

19  R. Civ. P. 23(b)(3)(A)–(D).  "Class actions . . . may permit the plaintiffs to pool claims which

20  would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S.

21  797, 809 (1985); *see also* 7A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure

22  § 1779 (2d. ed. 1986) ("[I]f a comparative evaluation of other procedures reveals no other

23  realistic possibilities, this [superiority] portion of Rule 23(b)(3) has been satisfied.").

24  Here, Plaintiff asserts that class action is the superior method for adjudication of these

25  claims because it would be the most efficient and consistent method. (*See* Pl.'s Mot. at 15).

She further argues that the amount of statutory damages per claim is relatively small, and she indicates that it would be improbable that a large number of class members would be informed enough or have the initiative to litigate the claims themselves individually. (*See id.*).  NLS counters that damages available under the FDCPA are not insubstantial; the cost of litigating FDCPA cases is not prohibitive; and the FDCPA allows for reasonable attorney's fees. (NLS Mot. at 24, ECF No. 44).

The Court finds that certification of this matter as a class action is the most efficient method of resolving the FDCPA claims of the class members.  As other courts have found,

> Class litigation is a superior vehicle for the instant case given economies of scale. FDCPA cases are unlikely to be brought on an individual basis due to the statute's low cap on individual damages, especially when compared to potential litigation costs. *See* 15 U.S.C. § 1692k(a)(2) (individual damages capped at $1,000, but class action damages capped at $500,000 or 1 % of debt collector's net worth, whichever is less).  Additionally, a class action will promote a unity of analysis and outcome, compared to potentially conflicting outcomes across a multitude of individual suits.

*Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 356 (E.D.N.Y. 2013); *see also Ballard v. Equifax Check Services, Inc.*, 186 F. Supp. 589, 600 (E.D. Cal. 1999); *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Litig.*, 208 F.R.D. 493, 507 (S.D.N.Y. 2002) ("Suits brought under the FDCPA such as this case regularly satisfy the superiority requirement of Rule 23.").  Furthermore, each class member will be notified of the right to be excluded from the class.  Thus, any class member who wishes to bring an individual case in hopes of recovering greater damages may do so.  The Court therefore finds that the superiority element is satisfied.

Having found that all of the requirements of Rule 23(a) and Rule 23(b) are met, NLS's Motion to Deny Class Certification is denied and Plaintiff's Motion for Class Certification is granted.

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### C.    Proposed Class Counsel

Rule 23(g)(1) states that "[u]nless a statute provides otherwise, a court that certifies class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).  Under Rule 23(g)(1), the Court considers four factors when appointing counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *Id.*

O. Randolph Bragg and Keren Gesund have invested in this case and attest to their many years of experience in handling class action consumer rights litigation.  Bragg has written many published works pertaining to this particular area of law and has lectured professional groups on consumer law issues. (Bragg Decl. ¶¶ 5, 13, ECF No. 45-7).  Gesund has several years of experience litigating consumer rights class actions and has spent time and effort investigating the instant case. (Gesund Decl., ECF No. 45-1); (*see also* Pl.'s Mot. at 11–12).  Having considered the applicable factors, the Court finds that Plaintiff's attorneys are adequate to be appointed as certified class counsel.

///

///

///

1  **IV.**   <u>**CONCLUSION**</u>

2       **IT IS HEREBY ORDERED** that NLS's Motion to Deny Class Certification, (ECF No.

3  44), is **DENIED**.

4       **IT IS FURTHER ORDERED** that Plaintiff's Motion for Class Certification, (ECF No.

5  45), is **GRANTED**.

6       **DATED** this <u> 28 </u> day of May, 2020.

7

8       _____

9       Gloria M. Navarro, District Judge
        United States District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25