# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

NICOLE DIANE LA CARIA,               )
                             )
           Plaintiff,               )      Case No.: 2:18-cv-00317-GMN-DJA
   vs.                      )
                             )      **ORDER**
NORTHSTAR LOCATION SERVICES, LLC,)
                             )
          Defendant.               )
_____)

Pending before the Court is the Unopposed Motion for Preliminary Approval of Class Settlement, (ECF No. 74), filed by Plaintiff Nicole Diane La Caria ("Plaintiff").

Also pending before the Court is Plaintiff's Motion for Partial Summary Judgment, (ECF No. 55). Defendant Northstar Location Services, LLC ("NLS") filed a Response, (ECF No. 65), and Plaintiff filed a Reply, (ECF No. 66).

Also pending before the Court is Defendant's Motion for Certification of Interlocutory Appeal and for Stay of Proceedings, (ECF No. 69). Plaintiff did not file a response.

For the reasons discussed below, Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement is **GRANTED**. Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Certification of Interlocutory Appeal and for Stay of Proceedings are **DENIED as moot**.

## I.   BACKGROUND

This case arises out of Defendant's alleged failure—as a debt collector—to comply with the notification requirements enumerated in the Fair Debt Collection Practice Act ("FDCPA"). Plaintiff filed this class action lawsuit against NLS alleging that its initial communication, a scripted telephonic voicemail, failed to notify the class members that "the debt collector is

attempting to collect a debt and that any information obtained will be used for that purpose," in violation of 15 U.S.C. §§ 1692e(10) and e(11) of the Fair Debt Collection Practices Act ("FDCPA"). (Unopposed Mot. for Preliminary Approval 3:17–22, ECF No. 74).

NLS is a debt collection organization established in 2001 that provides, among other services, first and third-party collections, customer care programs, and location services to clientele nationwide. (NLS's Mot. Deny Class ("NLS Mot.") at 3, ECF No. 44).  According to Plaintiff, NLS relies on a form collection letter to convey the required § 1692e(11) disclosures. (Form Collection Letter, Ex. 1 to Compl., ECF No. 1-1).  To contact a debtor regarding an outstanding debt, NLS employees call consumers and if they do not answer, it is NLS's policy to leave the following scripted message: "We have an important message from Northstar Location Services.  This is a call from a debt collector.  Please call [Department Phone #]." (Fourth Amended Notice of Depo., Ex. 1 to Pl.'s Mot. Partial Summ. J., ECF No. 55-1).  This communication, however, does not include the following statutorily-required notice: "[NLS is] attempting to collect a debt and that any information obtained will be used for that purpose." *See* 15 U.S.C. § 1692e(11).  On the same day NLS leaves a voicemail message for the debtor, NLS also electronically sends form collection letters, which provide the requisite § 1692e(11) disclosures, to NLS's third-party letter vendor, Matrix Image Solutions ("Matrix"). (*See* Matrix Service Contract, Ex. 2 to Pl.'s Mot., ECF No. 45-3).  Matrix then mails the form collection letters to the debtors the next day. (*Id.*); (Pl.'s Mot. Class Certification ("Pl.'s Mot.") at 3, ECF No. 45).  Nevertheless, it is Matrix's practice to timestamp the letters with the date the letters were electronically transferred from NLS to Matrix, rather than the date the letters are actually mailed. (Basta Dep. 17:16–21, Ex. 5 to Pl.'s Resp., ECF No. 47-5).  Thus, Plaintiff alleges the allegedly non-compliant voicemail message is the initial communication left for the debtor. (Pl.'s Resp. at 2, ECF No. 47).

Plaintiff further contends that all of NLS's collection activities are notated in a detailed collection log NLS maintains for each debtor. (*Id.* at 4).  When a debt collector leaves the above scripted voicemail message, he or she notes, "LEFT MESSAGE W/ MACHINE" along with the date, time, and phone number called. (*See* NLS Collection Log, Ex. 6 to Pl.'s Resp., ECF No. 47-6); (Leising Dep. 40:6–19, Ex. 3 to Pl.'s Resp., ECF No. 47-3).  When NLS sends a collection letter to Matrix for mailing, NLS's case management system documents "LT1 NOTICE SENT VIA MATRIX" along with the date and time the letter was sent to Matrix. (*See* NLS Collection Log, Ex. 6 to Pl.'s Resp.); (Leising Dep. 21:2–8, Ex. 3 to Pl.'s Resp.).  Matrix does not notify NLS of the date the letter is actually mailed to the debtor. (Basta Dep. 27:22–24, Ex. 5 to Pl.'s Resp.).  NLS is able to perform electronic searches of its collection logs to identify the number of accounts that received a voicemail on the same day NLS electronically transferred the consumer's information to Matrix. (Pl.'s Resp. at 4).  According to NLS, this potentially happened on 197 accounts. (NLS Resp. Interrog., Ex. 7 to Pl.'s Resp., ECF No. 47-7).

Navient is one of NLS's clients that engages NLS to collect delinquent student loan debt. (Pl.'s Resp. at 8).  In 2005, Plaintiff obtained a student loan, but after experiencing financial hardship, she was unable to make the necessary loan payments. (*Id.*).  On December 26, 2017, Navient sent Plaintiff's account to NLS for collection. (*Id.*); (NLS Collection Log, Ex.6 to Pl.'s Resp).  About seven hours after receiving Plaintiff's account, NLS called Plaintiff's cell phone and left the following message: "Yes, very important message from Northstar Location Services.  This is a call from a professional debt collector, please call back at [phone number].  Thank you." (*Id.*).  On December 27, 2017, Matrix printed and mailed NLS's initial collection letter to Plaintiff; however, the letter is dated December 26, 2017. (Basta Dep. 17:5–9, Ex. 5 to Pl.'s Resp.).  Plaintiff therefore contends NLS's voicemail message was placed with Plaintiff a day before the collection letter was sent. (Pl.'s Resp. at 9).

On February 21, 2018, Plaintiff filed her Complaint, (ECF No. 1), alleging violations of the FDCPA as part of a putative class action on behalf of herself and similarly situated persons. On May 28, 2020, the Court granted Plaintiff's Motion to Certify Class, (ECF No. 45), defining the class as:

> (i) all Nevada residents to whom NLS sent a letter in the form of Exhibit 1 attached to the Complaint (ii) which was not returned as undeliverable (iii) in an attempt to collect a debt incurred for personal, family, or household purposes as shown by Defendants or the creditors' records (iv) who [were] left a voicemail message from NLS on the same day that Exhibit 1 was dated (v) and were not notified during the call that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" (vi) during the one year prior to the filing of this lawsuit.

(Order Certifying Class 5:14–18, ECF No. 68).  On October 6, 2020, the parties reached a settlement after arms-length negotiations and subsequently submitted the Proposed Settlement now before the Court. (*See* Unopposed Mot. for Preliminary Approval, ECF No. 74).  Under the Proposed Settlement, Defendant agrees to pay the following:

> (1) $40,000 (which is at least 1% its net worth) to the class, whereby each class member who does not opt-out and makes a timely claim will receive a pro rata share, (2) the reasonable costs of notice and administration, (3) $5,000.00 to the Class Representative, consisting of statutory damages of $1,000.00, pursuant to 15 U.S.C. §1692k(a)(2) and an incentive award of $4,000.00, and (5) any reasonable attorney's fees, costs or expenses awarded by the Court to Class Counsel per 15 U.S.C. § 1692k(a)(3).

(Pl.'s Unopposed Motion 2:23–3:3).  In exchange, Plaintiff, on behalf of the Settlement Class, agrees to dismiss the underlying case and release Defendant from all claims relating to the underlying accounts and practices at issue. (*Id*. 3:3–6).

## II.   <u>LEGAL STANDARD</u>

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e).  When the parties

to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  At the preliminary stage, the court must first assess whether a class exists. *Id*. (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination as to the fairness of the class settlement.  Third, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

## III.   <u>DISCUSSION</u>

The instant Motion seeks preliminary approval of the parties' Proposed Settlement and requests the Court schedule a Final Approval Hearing. (Pl.'s Unopposed Mot. 4:16–17).  In the Motion, Plaintiff asserts that the settlement is fair, adequate, and reasonable. (*Id*. 7:23–8:8).  Plaintiff additionally claims that the proposed method of class notice is appropriate. (*Id*. 11:6–12:10).  The Court first analyzes whether the proposed settlement is reasonable.

### A.  Fairness, Reasonableness, and Adequacy of Proposed Settlement

Courts have long recognized that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026.  One inherent risk is that class counsel may collude with the defendants, "tacitly reducing the overall settlement in return for a higher attorney's fee." *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *see Evans v. Jeff D.*, 475 U.S. 717, 733 (1986).

To guard against this potential for class action abuse, Rule 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a

determination that the settlement taken as a whole is fair, reasonable, and adequate. Fed. R.

Civ. P. 23(e)(2); *see Staton*, 327 F.3d at 972 n.22 (noting that the court's role is to police the

"inherent tensions among class representation, defendant's interests in minimizing the cost of

the total settlement package, and class counsel's interest in fees"); *Hanlon*, 150 F.3d at 1026

("It is the settlement taken as a whole, rather than the individual component parts, that must be

examined for overall fairness.").

The factors in a court's fairness assessment will naturally vary from case to case, but

courts in the Ninth Circuit generally must weigh the *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
> duration of further litigation; (3) the risk of maintaining class action status
> throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
> completed and the stage of the proceedings; (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and (8) the reaction of the class
> members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

i.    <u>Strength of Plaintiff's Case and Risk of Further Litigation</u>

With respect to the first two *Churchill* factors, the Court must weigh the "strength of

[the plaintiff's] case relative to the risks of continued litigation." *Lane v. Facebook, Inc.*, 696

F.3d 811, 823 (9th Cir. 2012).  Approval of a class settlement is appropriate in cases in which

"there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v.

McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Similarly, difficulties and

risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. West Publ'g

Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Here, Plaintiff asserts that there remain issues that may need to be decided on summary

judgment or alternatively, at trial. (Pl.'s Unopposed Mot. 8:24–26).  Plaintiff, on behalf of the

Class, primarily alleges that Defendant failed to provide proper disclosures in its initial

communication via voicemail under the FDCPA. (Compl. ¶ 16).  Plaintiff acknowledges that Defendant vigorously contests both the merits of Plaintiff's statutory claims and the appropriateness of class certification. (Pl.'s Unopposed Mot. 8:13–15).  Specifically, Defendant argues that Plaintiff fails to establish any particularized or concrete injury to establish standing because Plaintiff admitted that she did not listen to the voicemail in question. (Def.'s Resp. Pl.'s Mot. Summ. J. 6:20–23, ECF No. 65).  Plaintiff, however, asserts that there is standing because Plaintiff testified that she listened to the voicemail before receiving the collection letter. (Pl.'s Reply 4:3–9, ECF No. 66).  Although Plaintiff emphasizes the meritorious nature of the Class's claims, Plaintiff asserts that if litigation were to continue, the issues will need to be decided on summary judgment motions and potentially at trial. (Pl.'s Unopposed Mot. 8:24–25).

Plaintiff further claims that further litigation will not, and cannot, improve the outcome for the class given that the FDCPA statutorily limits Defendant's liability to one percent (1%) of the Defendant's net worth. (Pl.'s Unopposed Mot. 8:21–24); *see also* 15 U.S.C.§ 1692k(a)(2)(B).  Because settlement eliminates this lengthy process and further litigation may not improve the outcome, the Court finds that the first two factors weigh in favor of granting preliminary approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

ii.    Risk of Maintaining the Class Status

Regarding the third *Churchill* factor, the Court considers the risk of maintaining class action status through the duration of the case.  Under Federal Rule of Civil Procedure 23(c), an "order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C).  Plaintiff acknowledges, and Defendant does not

dispute, that there are risks involved in pursuing this case given the complexity and uncertainty in a class action litigation. (Pl.'s Unopposed Mot. 8:11–13).  Indeed, Defendant disputes whether Plaintiff even has standing to even bring the suit.  (Def.'s Resp. Pl.'s Mot. Summ. J. 6:20–23).  Given the uncertainty of this suit, the Court is satisfied that there are risks associating with pursuing and maintaining the instant class action.  Therefore, this factor weighs in favor of approval.[1]

### iii.   Amount Offered in Settlement

With respect to the fourth *Churchill* factor, the Court analyzes the proposed settlement amount.  In assessing the consideration obtained by class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Service Com'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).  In this regard, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Plaintiff contends that the settlement amount of $40,000.00 is reasonable given that the Settlement Agreement provides the class with payment of at least 1% of Defendant's net worth. (Pl.'s Unopposed Mot. 10:2–4).  Because the FDCPA limits statutory damages to the lesser of $500,000.00 or 1% of the debt collector's net worth in a class action, Plaintiff asserts that the award is fair, appropriate, and reasonable. (*Id*. 10:2–4).  Indeed, the Settlement Agreement provides for the creation of a $40,000.00 common fund—an amount Defendant represents is at least 1% of its net worth—which will be paid to a class of potentially 197 persons, with each

---

[1] The Court notes that the United States Supreme Court recently granted writ of certiorari in *Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 2020), *cert. granted* (No. 20-297).

person receiving a pro rata share. (*Id*. 4:11); (Settlement Agreement ¶ 5.1).  The monetary

recovery for each class member, potentially $203.05, falls within the range of prior approved

settlements in FDCPA class actions. *See*, *e.g.*, *Schwarm v. Craighead*, 814 F. Supp. 2d 1025,

1031-32 (E.D. Cal. 2011) (approving FDCPA settlement where distribution plan left no

monetary recovery for class members); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D.

673, 684 (N.D. Cal. 2016) (approving FDCPA settlement recovery of $15.10 per class

member); *Harper v. Law Office of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2017 WL

995215, at *4 (N.D. Cal. Mar. 15, 2017) (approving FDCPA settlement recovery of $10 per

class member).  Given that the FDCPA statutorily limits the actual damages and that the

settlement amount falls within the accepted range of prior approved settlements in FDCPA

class actions, at this stage, the Court is satisfied that the amount offered in settlement is within

the range of reasonableness.

iv.   <u>Extent of Discovery Completed</u>

Next, the Court turns to the extent of discovery completed and the stage of the

proceedings.  This action was initially filed on February 21, 2018. (*See* Compl., ECF No. 1).

To date, the parties have conducted at least four depositions and reviewed over 162 pages of

document review. (Pl.'s Unopposed Mot. 10:10–13).  In Plaintiff's Motion for Partial Summary

Judgment, Plaintiff attached depositions from Aaron Castlevetere, Chief Operating Officer at

NLS, Linda Leising, Chief Compliance Officer at NLS, and Patricia Mabrino, Transmission

Operation at NLS. (*See* Aaron Castlevetere's Depo., Ex. 1 to Pl.'s Mot. Partial Summ. J., ECF

No. 55-1); (*see also* Linda Leising's Depo., Ex. 3 to Pl.'s Mot. Partial Summ. J., ECF No. 55-

3); (*see also* Patricia Mabrino's Depo. Ex. 8 to Pl.'s Mot. Partial Summ. J., ECF No. 55-8).   In

response to Plaintiff's Motion for Partial Summary Judgment, Defendant also attached

additional transcripts of depositions from David Basta, Matrix's Corporate Secretary and

Plaintiff. (*See* David Basta's Depo., Ex. 2 to Def.'s Resp. to Pl.'s Mot. Partial Summ. J., ECF

1    No. 65-3); (*see also* Pl.'s Depo., Ex. 3 to Def.'s Resp. to Pl.'s Mot. Partial Summ. J., ECF No.

2    65-4). Additionally, the Scheduling Order's date for the completion of discovery, November

3    30, 2018, has now passed. (Joint Am. Discovery Plan and Scheduling Order ¶ 4, ECF No. 42).

4    The Court, therefore, finds that based upon this litigation history and the extent of discovery

5    completed that "counsel had a good grasp on the merits of their case before settlement talks

6    began," and, therefore, this factor weighs in favor of approval. *Rodriguez*, 563 F.3d at 967.

7                     v.      Experience of Counsel

8         Under the sixth *Churchill* factor, the Court considers the experience and views of class

9    counsel. The Ninth Circuit has declared that "[p]arties represented by competent counsel are

10    better positioned than courts to produce a settlement that fairly reflects each party's expected

11    outcome in litigation." *Id.* (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

12    1995)). Plaintiff asserts that both Plaintiff's counsel and Defendant's counsel have experience

13    litigating class actions relating to consumer rights, including FDCPA actions. (Pl.'s Unopposed

14    Mot. 10:24–25). Plaintiff's counsel appears to have extensive experience in consumer class

15    actions and particularly specializes in consumer class actions primarily brought pursuant to the

16    FDCPA. (Bragg's Decl. ¶ 6, Ex. 7 to Pl.'s Mot. Class Certification, ECF No. 45-7). With

17    respect to Plaintiff's Counsel's experience, the Court is satisfied that Plaintiff's Counsel has

18    extensive experience including personal involvement in complex class action suits and

19    settlements in consumer rights cases. (*See id.* ¶ 5–13).

20                  vi.      Reaction of Class Members of the Proposed Settlement

21         The final *Churchill* factor, the reaction of the class members to the proposed settlement,

22    is inapplicable at this time. However, upon final fairness review, the Court will consider how

23    this factor impacts the *Churchill* analysis.[2]

24

25

---

[2] The Court does not discuss the seventh *Churchill* factor—participation by government entity—because Plaintiff does not assert claims against any governmental body or agency in its Complaint. (*See* Compl., ECF No. 1).

1

**B. Proposed Incentive Award**

2      The Proposed Settlement provides for a "an incentive award of $4,000.00" to Plaintiff.

3  (Settlement Agreement ¶ 6.3).  The purpose of an incentive award is to "compensate class

4  representatives for work done on behalf of the class, to make up for financial or reputational

5  risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as

6  a private attorney general." *Rodriguez*, 563 F.3d at 958–59.  To justify an incentive award, a

7  class representative must present "evidence demonstrating the quality of plaintiff's

8  representative service," such as "substantial efforts taken as class representative to justify the

9  discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*,

10  252 F.R.D. 652, 669 (E.D. Cal. 2008).  Without satisfactory elaboration on these points, courts

11  are justified in reducing incentive awards following the final fairness hearing to a reasonable

12  amount. *See*, *e.g.*, *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6

13  (N.D. Cal. Oct. 21, 2013).

14      Here, Plaintiff alleges that she diligently pursued this litigation on behalf of the class by

15  providing written discovery to Defendant and being deposed. (Pl.'s Unopposed Mot. 6:27–7:1).

16  Plaintiff, however, does not provide further explanation describing her efforts in detail.

17  Without satisfactory elaboration on these points, the Court will reduce the incentive award

18  following the final fairness hearing to a reasonable amount. *See*, *e.g.*, *Wolph v. Acer Am. Corp.*,

19  No. C 09-01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013).

20

**C. Proposed Class Notice and Administration**

21      For proposed settlements under Rule 23, "the court must direct notice in a reasonable

22  manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1);

23  *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class

24  settlement under Rule 23(e).").  A class action settlement notice "is satisfactory if it generally

25

describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 561 F.3d at 575.

Pursuant to the Settlement Agreement, NLS will provide "the Claims Administrator and Class Counsel, on a confidential basis, with access to the names and mailing or e-mail addresses for persons in the class for whom they have such information." (Settlement Agreement ¶ 10.1). Within thirty (30) days following preliminary approval of the settlement, "the Claims Administrator will provide individual notice to the most recent mailing address from the Class List, which shall contain a claim ID . . . [and] mailing of the Notice shall be handled by the Claims Administrator in accordance with its regular procedures for updating addresses through the National Change of Address database maintained by the United States Postal Service where available." (*Id*. ¶ 10.2). For all returned direct mail, the Claims Administrator will perform skip tracing. (*Id*.). Because mail delivery is an appropriate form of delivery, the Court finds the method of notice is sufficient. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (finding notice by mail as a sufficient form of delivery so long as notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

Plaintiff also provided the Court with a copy of the proposed Notice and Claim Form. (*see* Mail Notice, ECF No. 74-5); (*see also* Claim Form, Ex. 1 to Pl.'s Unopposed Mot, ECF No. 74-3). "Under Rule 23, the notice must include, in a manner that is understandable to potential class members: '(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).'" *Calderon v. Wolf Firm*, No. SACV16-1266-JLSKESx, 2018 WL 6843723, at *10 (C.D. Cal. Mar. 13, 2018)

(citing Fed. R. Civ. P. 23(c)(2)(B)).  The proposed notice here includes this necessary

information. (*See* Class Notice).  Given the completeness of the Notice and the acceptable

proposed form of delivery, the Court approves the parties' notice mechanism as sufficient.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Unopposed Motion for Preliminary

Approval of Class Settlement, (ECF No. 74), is **GRANTED** as follows.

1. The proposed settlement agreement is preliminary approved as fair and adequate;

2. Within thirty (30) days of this Order, the Claims Administrator, First Class, Inc.,
   shall direct notice to class members via direct mail ("Notice Deadline"), which
   includes the Notice Form and Claim Form;

3. The deadline for class members to submit a claim ("Opt-Out and Objection
   Deadline"), opt-out, or file an objection shall be forty-five (45) days after the Notice
   Deadline;

4. The deadline for Class Counsel to file a motion for attorneys' fees and expenses shall
   be thirty (30) days after entry of this Order.

5. A final fairness hearing shall take place on Tuesday, May 11, 2021, at 10:00 am in
   Las Vegas Courtroom 7D before Judge Gloria M. Navarro.  The matter of Class
   Counsels' motion for attorneys' fees and expenses will be considered at the final
   fairness hearing.

**DATED** this ___11___ day of January, 2021.


_____
Gloria M. Navarro, District Judge
United States District Court